**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

YUMISLEY ALBERTO MARTINEZ,

Petitioner,

v. Case No. 3:26-cv-1399-WWB-PDB

WARDEN, NORTH FLORIDA
DETENTION CENTER, et al.,

Respondents.

---

**ORDER**

Petitioner, an immigration detainee at California City Immigration Processing Center,[1] initiated this action by filing a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). Federal Respondents filed a Response (Doc. 6) with exhibits (Doc. Nos. 6-1 to 6-4). Petitioner filed a Reply (Doc. 8). The case is ripe for review.

## I. PETITION AND BACKGROUND

Petitioner, a native of Cuba, was paroled into the United States on September 27, 1994. (Doc. 1 at 1; Doc. 6-1 at 11). An immigration judge ordered Petitioner removed, and his removal order became final on November 26, 2013. (Doc. 6-2 at 1; Doc. 6-3 at 2). Immigration and Customs Enforcement ("**ICE**") later released Petitioner on an Order of Supervision ("**OSUP**") on December 4, 2013. (Doc. 6-3 at 2). On October 24 or 25,

---

[1] When Petitioner initiated this case, he was detained at Baker County Detention Center in Macclenny, Florida, which is located within this Court's jurisdiction. (Doc. 1 at 1).

2025, ICE re-detained Petitioner.[2] (*See* Doc. 1 at 2; Doc. 6-1 at 13; Doc. 6-3 at 2; *see generally* Doc. 6-4).

Petitioner remains in ICE custody. He asserts that his prolonged detention has violated his rights under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 2–3). As relief, he seeks, *inter alia*, immediate release from immigration detention. (*Id.* at 3).

## II. ANALYSIS

Once an alien is ordered removed, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("[Section] 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." During the removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2)(A).

The Supreme Court has held that indefinite detention of aliens raises serious constitutional concerns. *Zadvydas*, 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal*." *Id.* at 699 (emphasis added). The Supreme Court held that

[2] In the Petition, Petitioner states that ICE re-detained him on October 24, 2025. (Doc. 1 at 2). But other documents attached to the Response indicate that ICE re-detained Petitioner on October 25, 2025. (Doc. 6-3 at 2; *see generally* Doc. 6-4). Nevertheless, under either date, Petitioner was detained for more than six months when he filed this action on May 22, 2026. (*See generally* Doc. 1).

six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01*.* "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Here, for purposes of this Order, the Court finds that ICE took Petitioner into custody on October 25, 2025, and he filed this case 209 days later, on May 22, 2026. (*See* Doc. 1 at 3; Doc. 6-1 at 13; Doc. 6-3 at 2; *see generally* Doc. 6-4). Although Petitioner had been detained longer than 180 days when he filed this case, Federal Respondents ask the Court to toll the six-month period because Petitioner has not cooperated with their removal efforts. (Doc. 6 at 7).

Section 1231(a)(1)(C) permits the "removal period" to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary

to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "acts to prevent [his] removal" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019) (quoting *Pelich v. Immigr. & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)); *see Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S.*

*Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas*, 533 U.S. at 701)).

According to Federal Respondents, ICE intends to remove Petitioner to Mexico, but Petitioner has refused to sign several notices of removal. (Doc. 6 at 7). In support of that contention, Federal Respondents offer the Declaration of ICE employee Manuel J. Maldonado. (*See generally* Doc. 6-3). Maldonado states that Petitioner received notices of removal on March 5, March 25, and May 23, 2026, but he refused to sign any of the three documents. (Doc. 6-3 at 2). Without clarifying the need for a signed notice of removal or providing any relevant context, Maldonado goes on to explain the general procedure for removal to Mexico. He states that "[t]he receiving ERO relief office will then notify Mexico's Instituto Nacional de Migracion (INM) of the petitioner's upcoming removal to Mexico"; and "[f]ollowing INM's final acceptance, he will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico." (*Id.*). Maldonado maintains that ICE's southwest border processes "third-country removals to Mexico [ ] a varying amount each week"; and removals take place "once a week to several times a week." (*Id.* at 3). Based on those facts, he asserts ICE has determined there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. (*Id.*).

But Federal Respondents have not shown that Petitioner's "failure to sign" those notices was like a "refus[al] to make timely application in good faith for travel or other documents necessary" for his removal or that his "failure to sign" otherwise prevented his removal. 8 U.S.C. § 1231(a)(1)(C). The three documents that Petitioner refused to sign

are notices to him about ICE's intention to remove him to Mexico, not applications for travel documents or forms that would otherwise assist in his removal. (*See* Doc. 6-3 at 2). And Federal Respondents fail to argue that a signed notice is required for Petitioner's removal. (*See generally* Doc. 6). Indeed, even if Federal Respondents declare that Petitioner's signature on such a notice is mandatory before ICE can begin Petitioner's removal to Mexico, and Petitioner has not signed that document, then ICE's argument that his removal is reasonably foreseeable is especially unpersuasive. *See, e.g.*, *Ruiz v. U.S. Dep't of Homeland Sec.*, No. 3:26-cv-1061, 2026 WL 1858238, at *4 (M.D. Fla. June 29, 2026) ("[T]here is no indication in the record that [p]etitioner has signed [a notice or removal]; thus, if his signature is required to begin the process . . . for removal, then it is even more unclear how he could have been 'nominated for the next available flight to the southwest border . . . for removal to Mexico.'"). To that end, the Court finds that Petitioner's failure to sign the notices does not warrant application of § 1231(a)(1)(C); and therefore, the presumptively reasonable six-month period of detention expired before Petitioner filed the Petition.

The Court also finds that Petitioner has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. Petitioner states that "ICE has not demonstrated that travel documents have been secured or that removal to Cuba is likely to occur . . . ." (Doc. 1 at 2). As to ICE's claim that it "intends" to remove him to Mexico, Petitioner states that ICE has neither made any legal arrangements for Petitioner's removal nor shown that Mexico is willing to accept him. (Doc. 8 at 1). Notably, despite being ordered removed in 2013, Petitioner has remained in the United States on an OSUP for more than twelve years.

(Doc. 6-2 at 1; Doc. 6-3 at 2). According to Petitioner, ICE revoked his OSUP without any change in circumstances. (Doc. 8 at 1–2). He has now been detained for more than nine months, yet ICE still has been unable to remove him or point to any efforts to effectuate that process other than attempting to have Petitioner sign his notice. Thus, the burden shifts to Federal Respondents to “respond with evidence sufficient to rebut that showing.” *Akinwale*, 287 F.3d at 1052. And, as explained below, they fail to do so.

Federal Respondents’ assertion that Petitioner’s continued detention is warranted because Petitioner’s removal to Mexico is reasonably foreseeable, (Doc. 6 at 9), is speculative and unsubstantiated. While Maldonado describes the general process and schedule for removals to Mexico, he does not specify when ICE plans to remove Petitioner. In fact, Maldonado executed his Declaration on June 15, 2026—over two months ago—yet Petitioner remains in custody. *See* Online Detainee Locator System, ICE, available at https://locator.ice.gov/odls/#/search (last visited Aug. 20, 2026). Also, and likely of more import, Maldonado makes no indication about whether Mexico will provide “final acceptance” of Petitioner. (Doc. 8-3 at 2 (“Following INM’s final acceptance . . . .”)).

Based on the evidence presented, the Court finds Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Thus, Petitioner is entitled to release from detention under *Zadvydas*.

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. The Petition (Doc. 1) is **GRANTED**.
2. Respondents shall release Petitioner, subject to supervision under 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order. Respondents shall provide

Petitioner with access to a telephone to arrange transportation from the detention facility.

3. Respondent Warden's Motion to Dismiss (Doc. 5) is **DENIED as moot**.

4. The **Clerk** shall enter judgment granting the Petition, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on August 21, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Jax-7
C:
Counsel of Record
Yumisley Alberto Martinez, A072838473